ERIC GRANT
United States Attorney
JOSEPH D. BARTON
ARELIS M. CLEMENTE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>JIA BEI ZHU,<br>aka Jesse Zhu, Qiang He, and David He,<br><br>                    Defendant. | CASE NO. 1:23-CR-00219-DAD<br><br>GOVERNMENT'S TRIAL BRIEF |

## I.    INTRODUCTION

This case is scheduled for a jury trial starting on April 21, 2026, and the government is submitting its trial brief as permitted by the Court's pretrial order.  The government plans to call approximately 27 witnesses and present approximately 220 exhibits for admission into evidence in its case-in-chief assuming the defense agrees to certain stipulations to which the defense previously indicated it would agree.  The defense also recently told the government that it does not plan to put on a defense case except for the possibly of having the defendant testify.  Therefore, the government believes that this case will be submitted to the Jury by May 1, 2026.

## II.    GOVERNMENT'S PROPOSED STATEMENT OF THE CASE

The government alleges that, from approximately August 2020 to March 2023, the defendant conspired with others to import faulty COVID-19 tests from his company Ai De in China and then make fraudulent representations to customers across the United States to sell the tests for millions of dollars.

The defendant is alleged to have made the fraudulent sales through his companies Universal Meditech Inc. ("UMI") and Prestige Biotech Inc. ("PBI") in Fresno and Reedley, California.  In doing so, he is alleged to have conspired with Zhaoyan "Yan" Wang, Zhaolin "Lynn" Wang, Kymlee Guan, Karekin Khatchadoorian, Rita Bernal, Xue "Sue" Liang, and Ying "Lydia" Zhu.  Zhaoyan "Yan" Wang is alleged to have been a co-owner and operator of UMI and PBI along with the defendant, and the rest are alleged to have been employees at UMI and PBI who took direction from them.

The fraudulent representations that the defendant and his co-conspirators are alleged to have made to customers to sell the COVID-19 tests include that the tests: (1) were approved by the FDA, (2) were made in the United States, (3) were made in connection with a certified lab named Skippack, and (4) could be made in high volumes in conformance with applicable ISO[1] quality standards.  As a result, the government has charged the defendant with one count of conspiring to commit wire fraud in violation 18 U.S.C. § 1349, eight counts of substantive wire fraud in violation of 18 U.S.C. § 1343, and two counts of distributing adulterated and misbranded devices in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

The charges for the distribution of adulterated and misbranded devices come from the Food, Drug, and Cosmetic Act ("FDCA").  The purpose of the FDCA is to protect the public health and welfare, including consumers.  To protect consumers from potentially unsafe and ineffective devices, the FDCA requires that devices be approved by the FDA and appropriately labeled before they can be sold in the United States.  A device that does not have the FDA's approval, or that is mislabeled as to its manufacturer, distributor, or country of origin, is deemed an adulterated or misbranded device and cannot lawfully be sold in the United States.  *See* H.R. Rep. No. 94-853 at 5-12 (1976); 21 U.S.C. § 331(a); *United States v. Dotterweich*, 320 U.S. 277, 280 (1943); *United States v. Kaplan*, 836 F.3d 1199, 1208-1209 (9th Cir. 2016).

The government further alleges that the defendant made false statements to FDA officials about his identity and involvement with UMI and PBI after the FDA recalled the COVID-19 tests he and his

---

[1] An ISO standard is an internationally agreed-upon, expert-verified standard that defines best practices, specifications, and guidelines for products, services, and systems to ensure quality, safety, and efficiency.

co-conspirators had sold and started an investigation in May 2023.  Specifically, the defendant is alleged to be Jia Bei "Jesse" Zhu, who was one of the owners and operators of UMI and PBI, and to have falsely identified himself to the FDA as Qiang "David" He, who had been recently hired by UMI and PBI to handle the FDA investigation.  As a result, the government has also charged the defendant with one count of making a false statement to a government official in violation of 18 U.S.C. § 1001(a)(2).

### III.    ELEMENTS OF THE CHARGED OFFENSES

The government identified and provided supporting authority for the elements for each of the charged offenses in the proposed jury instructions that it filed.  The government refers the Court to its filing for further details regarding these elements.  *See* Dkt. 140.

### IV.    GOVERNMENT'S CASE AGAINST THE DEFENDANT

#### A.  Fraudulent COVID-19 Test Sales

Before the COVID-19 pandemic hit, the defendant and his co-conspirators sold small amounts of pregnancy and other tests through UMI.  Sales then skyrocketed once they started offering COVID-19 tests.  From August 2020 to March 2023, they sold over 1,400,000 COVID-19 tests for more than $3,800,000.  Those sales were as follows and comprised over seventy percent of their total revenues:

**UMI COVID Test Orders**

| Customer | Date Range | Tests Ordered | Amount Charged |
|---|---|---|---|
| GOMD | May 2020 | 5,000 | $30,000.00 |
| Covid Scan | August 2020 | 21,000 | $77,000.00 |
| Cormeum-Sensiva | December 2020 to January 2021 | 793,750 | $2,475,000.00 |
| Skippack | October 2021 to January 2022 | 600,000 | $900,000.00 |
| Joanna Cosmetics Berryku Sunshine Easy Vapetro T-1 Finance Liberty Office Corpus Christy USD Texas Dept. Emergency Svcs. | January 2022 | 78,460 | $343,882.00 |
| | | 1,498,210 | $3,825,882.00 |

EXHIBIT
231
1:23-CR-00219

ZHU_00138844



In late 2022, UMI moved from its Fresno facility to its Reedley facility and rebranded itself as PBI.

### 1.  **Customer Testimony**

The government will call the above-referenced customers.  Many of them will testify that they dealt with Karekin Khatchadoorian in making the sales.  Some of them, however, will testify that they also dealt with the defendant.  This is especially so for Joanna Zhong, who owned Joanna Cosmetics.  Ms. Zhong will testify that she met the defendant around late 2020 when he opened a P.O. Box at her business in Southern California and identified himself to her as Qiang "David" He.  She will also testify that the defendant opened the P.O. Box so that he could use it for an asylum application he was submitting to United States Customs and Immigration Services ("USCIS") in that name.  Finally, she will testify that the defendant told her he had a factory in Fresno that made FDA-approved COVID-19 tests for a certified lab named Skippack and that she bought the tests from him on behalf of her friends in Texas, who were looking to source tests for their own customers.  Ms. Zhong is the only customer to whom the defendant identified himself as Qiang "David" He.  All the remaining customers who dealt with him knew him only as Jia Bei "Jesse" Zhu.

All the customers will testify that they would not have bought the COVID-19 tests but for the above-referenced fraudulent representations that were made to them, which will be corroborated by invoices, contract documents, emails, text messages, and other records they made and received during the sales.  Several of the customers will also testify that the tests they received were dysfunctional and could not be used.

## 2. Employee Testimony

The government will call Candice Liu.  Ms. Liu started at UMI when the defendant and Zhaoyan "Yan" Wang founded the company in 2015 and worked there until 2019.  Ms. Liu will testify that the defendant and Zhaoyan "Yan" Wang founded UMI to sell pregnancy and other tests after the defendant left a Canadian company that he owned and operated called IND that also sold pregnancy and other tests.  She will also testify that UMI only sold small amounts of pregnancy and other tests during her time there and that the company lost money and the defendant and  Zhaoyan "Yan" Wang had to support it with their own funds.  Finally, she will testify that the defendant and Zhaoyan "Yan" Wang owned and operated Ai De in China, and that is where they got the pregnancy and other tests that UMI sold as well as the money to support the company.

The government will also call several other UMI and PBI employees.  This includes Kymlee Guan, Karekin Khatchadoorian, Rita Bernal, Xue "Sue" Liang, and Ying "Lydia" Zhu.[2]  They will testify that the defendant and Zhaoyan "Yan" Wang instructed them to make the above-referenced fraudulent representations to customers to sell the COVID-19 tests.  This includes taking the tests out of Chinese boxes and putting them into boxes saying they were "Made in the USA" by Skippack.  The employees will acknowledge that they knew this was wrong when they did it:

///

///

///

---

[2] Ying "Lydia" Zhu has no relationship to the defendant.



Finally, the employees will testify that they only knew the defendant as Jia Bei "Jesse" Zhu and not as Qiang "David" He and will positively identify him in open court.[3]

Ms. Guan will further testify that, at the direction of the defendant and Zhaoyan "Yan" Wang, she submitted production orders to Ai De in China for hundreds of thousands of COVID-19 tests with instructions to falsely label them as pregnancy tests for customs purposes because they were not allowed to bring the COVID-19 tests into the United States.  Ms. Guan's account will be corroborated by production orders that the government will present as exhibits for admission during her testimony.  *See*, *e.g.*, Government Trial Exhibits 190-194.  And Dr. Adam Ruben, who ran the FDA's recall of the COVID-19 tests and will testify for government as set forth below, will confirm that UMI was banned from importing the COVID-19 tests after the FDA denied the company's application to sell them in the United States but was permitted to import pregnancy tests.

Mr. Khatchadoorian will further testify that that the defendant filled out the applications UMI submitted to the FDA for approval to sell the COVID-19 tests in the United States, told him that the FDA was taking a long time to review the applications, and instructed him to tell customers that the tests were FDA-approved when that was not true.  He will also testify that the defendant instructed him to lie about the origins of the COVID-19 tests in a deposition for a civil lawsuit filed by Cormeum/Sensiva Health and to lie to the FDA about selling the tests in the United States to try to prevent the FDA from discovering the illegal sales.  He will also testify that Zhaolin "Lynn" Wang ultimately admitted to him

---

[3] The employees will also confirm that the defendant is fluent in English.  This is despite his contention throughout this case that he does not speak English well.

after his deposition in the Cormeum/Sensiva Health lawsuit that everything was from China.  Finally, he will testify that the defendant instructed him to prevent customers from inspecting UMI and PBI's facilities so they would not see what was really happening inside.

### 3.   FDA and Expert Witness Testimony

#### i.   Dr. Alyxandria Schubert

The government will call Dr. Alyxandria Schubert.  Dr. Schubert is a regulatory scientist at the FDA.  She will testify that she reviewed the application UMI submitted to the FDA for approval to sell COVID-19 tests in the United States in May 2020, she denied the application, and UMI never received FDA approval.  She will also testify that she denied UMI's application for several reasons, including that it contained falsified test data.

#### ii.   Dr. Adam Ruben

The government will call Dr. Adam Ruben.  Dr. Ruben is a microbiologist and consumer safety officer at the FDA with significant experience in evaluating devices like COVID-19 tests to determine whether the devices meet FDA requirements.  The government will present both fact and expert witness testimony from Dr. Ruben and previously disclosed him to the defense as a potential expert in July 2025.

Dr. Ruben will testify that the COVID-19 tests sold by the defendant and his co-conspirators were "devices" for purposes of the distribution of adulterated and misbranded device charges, which is an element the Jury must find to convict the defendant on those charges.  He will also testify about the FDA's recall of the tests and how the FDA found that the defendant and his co-conspirators were falsely representing that the tests were FDA-approved and made by Skippack.  Finally, he will testify about how Karekin Khatchadoorian falsely told him that they were not selling the tests in the United States.  Dr. Ruben's account will be corroborated by online advertisements for the tests he found that falsely represented they were FDA-approved and emails that he received from Mr. Khatchadoorian.  *See*, *e.g.*, Government Trial Exhibits 118, 119, 198, and 200.

Assuming the Court grants the government's motions in limine, Dr. Ruben will further testify about prior acts the defendant committed at the company IND.  Specifically, Dr. Ruben will testify that the FDA banned IND from bringing various types of devices into the United States because the

company was found to have made false representations regarding the origin of devices, false statements on customs forms to import the devices, and selling and transporting the devices and related items without the required regulatory approvals. As discussed in the government's motion in limine filings, the government believes this testimony is permissible Federal Rule of Evidence ("FRE") 404(b) prior acts evidence because it is nearly identical to the misconduct charged in this case, and it shows that the defendant has essentially been engaged in the same scheme for the past three decades. Therefore, it is highly probative of the defendant's plan and mental state. *See* Dkt. 133, 136-138. The government will also present as exhibits for admission corporate and financial records for IND, including some with the defendant's name on them, that were found during the federal search warrant at UMI and PBI's Reedley facility in September 2023. These exhibits will be presented during the testimony of FDA Office of Criminal Investigations ("OCI") Special Agent Maridehl Mather, who executed the search warrant. *See*, *e.g.*, Government Trial Exhibits 133 and 142-144.

### iii.    Dr. David Vigerust

The government will call Dr. David Vigerust. Dr. Vigerust is a microbiologist and immunologist, Chief Scientific Officer for a biomedical company, and medical school professor with significant experience in the design, production, quality, and functionality of devices like COVID-19 tests. The government will present both fact and expert witness testimony from Dr. Vigerust and previously disclosed him to the defense as a potential expert in July 2025.

Dr. Vigerust will testify that he analyzed the COVID-19 tests the defendant and his co-conspirators sold to Cormeum/Sensiva Health and the tests were not close to meeting contract requirements. He will also testify about how he conducted a court-ordered inspection of UMI's Fresno facility in connection with Cormeum/Sensiva Health's civil lawsuit and that the facility lacked any quality controls, was unsanitary, and did not have the ability to manufacture high volumes of tests as had been represented to Cormeum/Sensiva Health. Finally, he will testify about how what he saw at the facility led him to conclude that the tests the defendant and his co-conspirators sold to Cormeum/Sensiva Health were not made in the United States but were instead made in China. Dr. Vigerust's account will be corroborated by several videos and photographs that he took during the inspection that the government will present as exhibits for admission during his testimony. *See*, *e.g.*,

Government Trial Exhibits 37-109.

**-- PHOTOS SHOWING INABILTY TO MAKE TESTS AND BAD CONDITIONS --**





**-- PHOTOS SHOWING TESTS FROM CHINA --**





#### iv.    **Juanj Wu**

The government will call Juanj Wu.  Ms. Wu is an FDA inspector who inspected UMI and PBI's facility in Reedley in May 2023.  Inspector Wu will testify that the defendant was interviewed during the inspection and showed that he understood the FDA's requirements for selling devices like COVID-19 tests.  She will also testify that the defendant identified himself to her as Qiang "David" He, which is discussed in more detail in the False Statements to FDA Officials section below.

Inspector Wu's account will be corroborated by recorded body camera videos that were taken while she was interviewing the defendant and letters that he provided to her that the government will present as exhibits for admission during her testimony.  *See*, *e.g.*, Government Trial Exhibits 121, 211-222 and 238.[4]  Assuming the Court grant's the government's motions in limine, her account will also be corroborated by false statements that the defendant made in the above-referenced asylum application he submitted where he falsely represented that he had obtained FDA approval to sell COVID-19 tests in the United States.  *See* Government Trial Exhibit 205.  The application has been certified by a USCIS custodian of records under FRE 902(4) and will be presented during the testimony of FBI Special Agent Chet Johnston, who is the case agent.  The government will present the asylum application for admission into evidence on the basis that is inextricably intertwined with the charged misconduct or permissible FRE 404(b) prior acts evidence because it shows the defendant's state of mind as discussed in its motion in limine filings.  *See* Dkt. 133, 136-138.

The government submits that this evidence will prove beyond a reasonable doubt that the defendant fraudulently sold the COVID-19 tests and that he is guilty of conspiracy, wire fraud, and distribution of adulterated and misbranded devices.

### B.  **False Statements to FDA Officials**

As previously discussed, the government will call FDA Inspector Wu who inspected UMI and PBI's facility in Reedley in May 2023.  She will testify that during the inspection the defendant identified himself to her as Qiang "David" He and told her that he had been recently hired by UMI and

---

[4] On the body camera videos, the defendant is seen speaking English fluently including when he describes scientific concepts.  This is despite his contention throughout this case that he does not speak English well.

PBI to handle the FDA's investigation. Inspector Wu's account will be corroborated by recorded body camera videos that were taken while she was interviewing the defendant and that the government will present as exhibits for admission during her testimony. This includes videos of the defendant showing her a work authorization card that he applied for and received from USCIS in the name of Qiang "David" He in connection with the above-referenced asylum application he submitted in that name. *See*, *e.g.*, Government Trial Exhibits 211-222 and 238.

Importantly, the false statements that the defendant made about his identity and time in the United States in the applications for asylum and work authorization that he submitted to USCIS are needed to provide context and establish a clear timeline for the Jury regarding when he started using the Qiang "David" He identity. They also show that he was trying to establish a completely different identity and backstory for himself, which gave him a motive to lie to Inspector Wu about who he was. Therefore, as previously discussed, the government will present the asylum and work authorization applications for admission into evidence on the basis that they are inextricably intertwined with the charged misconduct or permissible FRE 404(b) prior acts evidence as discussed in its motion in limine filings. *See* Dkt. 133, 136-138. The applications have been certified by a USCIS custodian of records under FRE 902(4) and will be presented during the testimony of FBI Special Agent Chet Johnston, who is the case agent. *See*, *e.g.*, Government Trial Exhibits 205 and 207-209.

As previously discussed, the government will also call FDA OCI Special Agent Maridehl Mather, who executed the federal search warrant at UMI and PBI's Reedley facility in September 2023. Special Agent Mather will testify that during the search warrant she found a Canadian driver's license from 2014 with a photograph of the defendant and the name Jei Bei Zhu listed on it, which the government will present as an exhibit for admission during her testimony. *See*, *e.g.*, Government Trial Exhibit 134.

The government will then call David Hyde, who is a senior fingerprint specialist with the Department of Homeland Security that the government previously disclosed to the defense as a potential expert in July 2025. Mr. Hyde will testify that fingerprints taken from the defendant by Customs and Border Protection Officer Shejal Desai in 2003, which is when he tried to enter the United States from Canada and identified himself as Jia Bei "Jesse" Zhu, matched fingerprints taken from him by Deputy

United States Marshal Shaun Miranda in 2023, which is when he was arrested in this case and identified himself as Qiang "David" He. The government will call Officer Desai and Deputy Marshal Miranda to authenticate the fingerprints assuming the defense does not stipulate to their authenticity.

The government submits that this evidence, combined with the fact that all the UMI and PBI employees will testify that the defendant was an owner and operator of UMI and PBI and will identify him as Jia Bei "Jesse" Zhu, will prove beyond a reasonable doubt that the defendant is guilty of making false statements to the FDA.

## V.   EVIDENTIARY ISSUES

### A.   Motions in Limine

Pursuant to the Court's pretrial order, the parties previously filed their respective motions in limine and oppositions thereto. The government refers the Court to its filings for further details regarding its motions in limine. *See* Dkt. 133, 136-138.

### B.   Explicit Findings Required Regarding Reliability of Expert Witnesses

As previously discussed, the government plans to present expert testimony of: (1) Dr. David Vigerust, (2) Dr. Adam Ruben, and (3) David Hyde. Recent Ninth Circuit case law requires the Court to make an explicit finding that each expert's testimony is reliable, which means that it has "a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188-90 (9th Cir. 2019). Therefore, if the Court agrees that the government's experts are qualified to testify in a specified subject area(s), the government requests that the Court make a finding on the record for each expert that: (1) he is qualified in the tendered area(s), and (2) based on the methodologies employed, he has a "reliable basis in the knowledge and experience of the relevant discipline" to offer opinions in the tendered area(s). These findings should be made before the experts are allowed to offer any expert opinions. *Ruvalcaba-Garcia*, *supra*, 923 F.3d at 1188.

### C.   Immunity Given to Karekin Khatchadoorian

The government has given Karekin Khatchadoorian immunity from federal prosecution in this case in exchange for his testimony against the defendant. This grant of immunity was previously disclosed to the defendant in the discovery. The government will also address this issue during its direct examination of Mr. Khatchadoorian.

### D. Translations

Some of the emails, text messages, body camera videos, and other records that the government will be presenting as exhibits for admission contain Mandarin Chinese language.  The government has obtained certified, English translations of these records and will be presenting both the translations and the original records for admission.[5]  The translations were done by FBI translators Jenny Gou and Susan Leu Lin, who the government will call to authenticate the translations assuming the defense does not stipulate to their authenticity.

### E. Witness Exclusion and Case Agent Designation

The government will move for all witnesses to be excluded from the courtroom until their testimony has been completed under FRE 615.  The government will also move that FBI Special Agent Chet Johnston be designated as the case agent and that he be exempt from the exclusion order.  *See United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985).

### F. No Reciprocal Discovery or Expert Disclosures Provided By the Defense

The defense has not produced any reciprocal discovery or made any expert disclosures to the government despite the government's requests for these items under Federal Rule of Criminal Procedure ("FRCP") 16. The government even told the defense that it would consider accepting reciprocal discovery and expert disclosures as late as two weeks before trial starts but still did not receive anything. Therefore, the government will move to bar the presentation of any such evidence by the defense at trial.

### G. No Notice of Possible Defenses Provided By the Defense

The defense has not provided the government with notice of any defenses that they may raise for which the FRCP require notice. Therefore, the government will move to bar the use of any such defenses should they be raised at trial.

---

[5] Government Trial Exhibit 15 is a certified translation of the relevant portions of Exhibit 14. Government Trial Exhibits 150 and 151 are certified translations of the relevant portions of Exhibits 148 and 149.  Government Trial Exhibit 174 is a certified translation of the relevant portions of Exhibits 165 and 167-173.  Government Trial Exhibit 192 is a certified translation of the relevant portions of Exhibits 190 and 191.  Government Trial Exhibit 194 is a certified translation of the relevant portions of Exhibit 193.  Government Trial Exhibit 238 is a certified translation of the relevant portions of Exhibits 211-223.

## VI.    CONCLUSION

The government thanks the Court and the Jury in advance for conducting this trial.


Dated:  April 12, 2026                              By:  */s/ Joseph Barton*
                                                                 Joseph Barton
                                                                 Arelis Clemente
                                                                 Assistant United States Attorneys