ERIC GRANT
United States Attorney
JOSEPH D. BARTON
ARELIS M. CLEMENTE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JIA BEI ZHU,<br>aka Jesse Zhu, Qiang He, and David He,<br><br>Defendant. | CASE NO. 1:23-CR-00219-DAD<br><br>GOVERNMENT'S OPPOSTION TO DEFENDANT'S MOTION FOR NEW TRIAL |

## I. INTRODUCTION

Following a multi-week trial, a jury convicted the defendant, Jia Bei Zhu, of fraudulently selling millions of dollars' worth of COVID-19 tests and lying to the FDA about his identity when they began investigating him. Defendant Zhu is now moving for a new trial under Federal Rule of Criminal Procedure 33. He raises two arguments in his motion: (1) there was a bias issue involving Juror No. 9 that was not effectively handled during the course of trial and therefore tainted the verdict, and (2) the Court erred in admitting parts of FDA employee Dr. Adam Ruben's testimony regarding the Canadian company IND under Federal Rule of Evidence 404(b) ("Rule 404(b)") because these parts consisted of hearsay and concerned events that were too remote in time.

The government opposes defendant Zhu's motion because he has waived both arguments. He has also failed to show that there was a miscarriage of justice as is required for there to be a new trial.

This is unsurprising because, as explained below, the bias issue with Juror No. 9 was fully addressed before opening arguments even began. Moreover, there is no actual hearsay in the parts of Dr. Ruben's testimony that defendant Zhu is challenging, and Dr. Ruben's testimony was carefully considered by the Court before being admitted to ensure that it was timely and appropriate under Rule 404(b). For these reasons, defendant Zhu's motion should be denied.

## II. LEGAL STANDARD

A motion for a new trial may be granted by the district court when the "interest of justice so requires." Fed. R. Crim. P. 33(a). Such a motion should only be granted "in an exceptional case in which the evidence weighs heavily against the verdict." *United States v. Merriweather,* 777 F.2d 503, 507 (9th Cir. 1985).

Importantly, whether to grant a new trial based on allegations of juror bias falls within a district court's sound discretion. *United States v. Hayat*, 710 F.3d 875, 885 (9th Cir. 2013) ("We review the denial of a motion for a new trial based on assertions of juror bias for abuse of discretion.") (internal citations omitted). And a "district court's factual findings relating to the issue of juror misconduct [are reviewed] for clear error." *United States v. Vartanian*, 476 F.3d 1095, 1098 (9th Cir. 2007).

## III. ARGUMENT

### A. Waiver

As an initial matter, defendant Zhu has waived his argument regarding the bias issue with Juror No. 9. During the Court's inquiry into Juror No. 9's remarks, defense counsel commented that it may lead to a mistrial. Dkt. 186 at Pg. 220:14. But he never actually moved for one. Instead, he told the Court that it was doing "a great job" and proceeded with the trial. Dkt. 186 at Pg. 220:7-8.

A defendant is not allowed to sit on a potential juror bias issue when he has a remedy available to him then and there, gamble on a favorable verdict, and claim foul after being convicted. *See United States v. Navarro*, 711 F. Supp. 3d 1, 7-9 (D.D.C. 2024) (collecting cases on this point); *see also United States v. McKinney*, 952 F.2d 333, 334, n.1 (9th Cir. 1991) (denying a new trial motion regarding juror bias because the defendant impliedly waived objection to the issue by accepting the juror and deciding to proceed with the verdict after learning about it). As the Ninth Circuit explained in *United States v. Showa*, 133 F.3d 930, 1997 WL 801452 (9th Cir. Dec. 19, 1997):

> [A] trial is not over until the verdict is received and the defendant has either been acquitted or convicted. Until then, and until the jurors have formally assented to the verdict and been excused, the trial is not completed. Court and counsel still have an opportunity to do something about newly discovered evidence, and correspondingly, the obligation to act on it. The proceedings are still part of the trial, and no new trial is required to remedy the wrong.

*Id.* at. *2. In fact, the cases that defendant Zhu cites in support of his motion for a new trial can easily be distinguished on this ground. In each of those cases, the defendants initially moved for mistrials before the verdicts were accepted by the courts. It was only after the defendants' motions for mistrials were denied that they then moved for new trials. *See*, *e.g.*, *United States v. Sanchez*, 175 F.4th 1134, 1136-1137 (9th Cir. 2026).

This rule that a defendant who learns about potential juror bias during trial must initially move for a mistrial to preserve the issue for a new trial motion makes good sense. It gives the district court the opportunity to hear arguments from the parties and remedy the issue in real time and thereby promotes judicial efficiency. By not moving for a mistrial then, defendant Zhu waived this argument entirely.

Similarly, although defense counsel claims to have objected to all the parts Dr. Ruben's testimony that he is challenging, the undersigned could only find one instance where he did so. Dkt 188 at 913:16-25. And he never moved for a mistrial on this ground. Therefore, defendant Zhu has waived this argument as well.[1]

### B. <u>Bias Issue with Juror No. 9 was Fully Addressed</u>

Even assuming that there was no waiver, defendant Zhu incorrectly analogizes the bias issue with Juror No. 9 to the issue with the juror in *Sanchez* and mistakenly asserts that the *Remmer v. United States*, 347 U.S. 227, 229 (1954), presumption of prejudice that the Ninth Circuit adopted in *Sanchez* (the "*Remmer-Sanchez* presumption") should control the Court's analysis here. Not so.

---

[1] At a minimum, if the Court does not find waiver, it should find that defendant Zhu has forfeited these claims. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Forfeited claims are reviewed for plain error. *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009).

Juror No. 9 was promptly excused for cause and replaced with an alternate before opening arguments began. Dkt. 186 at 212:1-6. The trial then continued for another two weeks before the case was submitted to the jury for deliberations. Dkt. 193 at 1910:8. Juror No. 9 did not hear any of the evidence. Nor did he engage in any of the deliberations. He was a non-factor. In contrast, the juror in *Sanchez* sat through the whole trial, heard all the evidence, and engaged in extensive deliberations and reached a partial verdict with the other jurors before being excused. *Sanchez*, 175 F.4th at 1154.

The issue with Juror No. 9 then is nothing like the issue with the juror in *Sanchez*. It is a completely different scenario that is more similar to the scenario in *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999).

In *Sarkisian*, the district court learned that a juror made remarks about gypsies mid-trial well before deliberations began, excused the juror for cause, and inquired with the remaining jurors and confirmed that they could remain fair and impartial. *Id.* at 980-981. The district court then denied the defendant's motion for a mistrial. *Id.* In affirming the denial, the Ninth Circuit explained that it gave "substantial weight" to the district court's assessment of the effect of extraneous information on the jury and that the "determination of impartiality … is particularly within the province of the trial judge." *Id.* at 980-982. The Ninth Circuit further explained that the district was correct in not applying the *Remmer-Sanchez* presumption and that the applicable standard was whether the juror's remarks "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict." *Id.* at 981-982. The Ninth Circuit then found that the district court had taken sufficient steps to ensure there was no such taint. *Id.* at 982

Like *Sarkisian*, this case involves pre-deliberation remarks by Juror No. 9 that were thoroughly inquired into and determined to be harmless by the Court as discussed below. Indeed, the possibility that Juror No. 9's remarks could have caused any harm is even more remote than in *Sarkisian* because his remarks were made at the very beginning of the trial as opposed to the middle or end of the trial. Therefore, the Court should apply the *Sarkisian* standard in assessing the impact of Juror No. 9's remarks instead of the *Remmer-Sanchez* presumption.

In any event, even if the *Remmer-Sanchez* presumption were to apply, it was shown that the jurors' exposure to Juror No. 9 was harmless. The Court promptly excused Juror No. 9 for cause upon

receiving his letter and learning about his views on immigrants and the COVID-19 pandemic. Dkt. 186 at 212:2-5. The Court then asked the remaining jurors if Juror No. 9 had talked to any of them about the letter. Two jurors raised their hands, and the Court questioned them individually outside the presence of the other jurors. The two jurors confirmed that they had not seen and were not otherwise aware of the contents of the letter, and that they did not believe anyone else had seen it. One of the jurors then said that Juror No. 9 had made some brief remarks about whether defendant Zhu was an illegal alien and expressed his frustration with being involved in a trial where the defendant may not be a United States citizen. This juror said that other jurors were present when Juror No. 9 made his remarks, but that no one engaged with him. This juror did not believe that anyone had paid any attention to Juror No. 9's remarks or otherwise processed them. Dkt. 186 at 213:8 –219:22.

The Court then brought all the jurors back into the courtroom and told them that it was assuming they may have heard at least some remarks by Juror No. 9 concerning immigrants and the COVID-19 pandemic. Dkt. 186 at 220:17 – 222:2. The Court explained that Juror No. 9 was unfit to serve as a juror because of his comments and his views, and that he had been excused for cause. Dkt. 186 at 222:3-8. The Court further explained that the parties were entitled to a fair and impartial jury that would decide the case based on the evidence presented to them in the courtroom and the instructions given to them by the Court, and not on the basis of any bias, prejudice, or other personal feelings they may have. The Court then asked the jurors to let it know if any of them felt like they could no longer be fair and impartial because of Juror No. 9's remarks. The Court clarified that it would not be upset if any of the jurors felt that way and that it was happy to discuss the matter with them individually if needed. All the jurors gave negative responses. Dkt 186 at 222:9 – 224:3. The Court then told the jurors that, if any of them wanted to discuss the matter at a later point in time, they could let the Court know by giving a note to the courtroom deputy. Dkt 186 at 225:23 – 226:2. No such notes were received during the trial.

The Court's use of these prophylactic measures at such an early stage of the trial, and the jurors' responses thereto, were more than sufficient to show that they had not been impacted by Juror No. 9's remarks. This is demonstrated in several ways.

First, the Court thoroughly questioned the jurors to ensure that they could remain fair and impartial. It therefore fulfilled its duty when a claim of juror bias is raised. *See United States v.*

*Bolandian*, 173 F.4th 1000, 1007 (9th Cir. 2026), *quoting Dyer v. Calderon*, 151 F.3d 970, 974 (9th Cir. 1998) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances."); *Id.* at 1008-1009, *quoting United States v. Boylan*, 898 F.2d 230, 258 (1st Cir. 1990) (explaining that a trial judge "fulfills his duty only if he erects, and employs, a suitable framework for investigating the allegation [of bias] and gauging its effects"); *see also United States v. Sublet*, 644 F.2d 737, 740-41 (8th Cir. 1981) (applying the *Remmer-Sanchez* presumption and affirming denial of a motion for mistrial after a juror received threat from trial spectators, and communicated the threat to the other jurors, because the district court carefully questioned the exposed jurors as to the effect of the threat and confirmed that they could remain fair and impartial).

Second, the Court expressly identified the subject matter of Juror No. 9's problematic remarks – immigrants and the COVID-19 pandemic – and then asked the jurors if those remarks impacted their ability to be fair and impartial. This is important because it helped prevent a situation where the jurors could have demonstrated subjective bias by not perceiving Juror No. 9's remarks as problematic and therefore not responding to or taken seriously the Court's inquiries. *See Sanchez*, 145 F.4th at 1153-1156 (finding that a tainted juror's remarks may be deemed harmless if the district court's inquiry accounted for possible subjective biases).

Third, the record shows that Juror No. 9 was just talking out loud and was not actively engaging in conversations with any of the other jurors. None of them understood what he was trying to convey by his remarks and, as a result, they ignored him. *See Id.* at 1153 (finding that a tainted juror's remarks may be deemed harmless if none of the other jurors paid attention to him).

Finally, Juror No. 9 was excused at the very beginning of the trial. *See Id.* at1149, *quoting United States v. Ferguson*, 486 F.2d 968, 971 (6th Cir. 1973) (explaining that a tainted juror being excused "before he had the opportunity to discuss the case with other members of the panel would be some evidence that no prejudice occurred"); *see also Id.* at 1153-1154 (finding that a tainted juror's remarks may be deemed harmless if the juror was removed mid-trial or earlier and not during deliberations). Therefore, under either the *Sarkisian* standard or the *Remmer-Sanchez* presumption, the Court should deny defendant Zhu's motion because Juror No. 9's remarks did not taint the verdict.

### C. **Court Did Not Error in Admitting Dr. Ruben's Testimony**

Prior to trial, the government filed motions in limine seeking to admit evidence of certain other acts by defendant Zhu pursuant to Rule 404(b). Dkt. 133 at 7-9. This included the parts of Dr. Ruben's testimony regarding IND about which defendant Zhu now complains. Defendant Zhu filed a cursory opposition that did not meaningfully address the government's Rule 404(b) arguments. *See* Dkt. 139. The Court then held a hearing on the matter where it stated that it had considered the relevant factors and granted the government's motions. Dkt. 185 at 5:17 – 6:11, 12:8 – 13:24.

Defendant Zhu argues that Dr. Ruben's testimony regarding IND consisted of impermissible hearsay. However, he has not identified any actual out-of-court statements that were admitted through Dr. Ruben's testimony. *See* Fed. R. Evid. 801(c)(1) (defining hearsay as an out-of-court statement that is offered to prove the truth of the matter asserted). Therefore, his hearsay objection is baseless. His follow-on argument that Dr. Ruben's testimony was too remote in time to be admitted under Rule 404(b) similarly lacks merit because it just rehashes the same arguments that he previously made and that the Court rejected. Dkt. 185 at 5:17 – 6:11, 12:8 – 13:24.

And, even assuming that Dr. Ruben's testimony regarding IND was somehow erroneously admitted, defendant Zhu has not shown how this error amounts to a miscarriage of justice given all the other incriminating evidence that was admitted at trial and that he does not challenge here. This includes largely similar testimony by Dr. Ruben, some of which defense counsel elicited himself. *See* Dkt. 188 at 920:7 – 922:6; Dkt. 189 at 964:5 – 1039:20. It also includes testimony from over twenty-five other witnesses and more than 225 exhibits. The reason that defendant Zhu does not account for this other evidence in his motion is clear. Considering it shows that any error the Court may have committed in admitting Dr. Ruben's testimony was harmless.

///

///

///

## IV. CONCLUSION

For these reasons, the Court should deny defendant Zhu's motion for a new trial.[2]

Dated: October 1, 2026

ERIC GRANT
United States Attorney

By: */s/ Joseph Barton*
Joseph Barton
Arelis Clemente
Assistant United States Attorneys

[2] The government reserves the right to supplement its opposition with additional evidence and arguments at the hearing on this matter, which is currently scheduled for October 26, 2026.